

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| ALLEN BRIDGERS,<br>　　　　Petitioner, | § | |
| | § | |
| vs. | § | No. 1:00cv724 |
| | § | |
| BRAD LIVINGSTON,  Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>　　　　Respondent. | §<br><br>§ | |

## <u>MEMORANDUM OPINION</u>

Before the court is the application for a writ of *habeas corpus* filed by petitioner Allen

Bridgers ("Bridgers") pursuant to  28 U.S.C. § 2254.  Bridgers was convicted of capital murder

and sentenced to death in the 114th  Judicial District Court of Smith County, Texas in cause

number 114-81252-97, styled *The State of Texas v. Allen Bridgers*.  Bridgers raises six claims for

relief alleging various constitutional violations.  Respondent Brad Livingston, Director of the

Texas Department of Criminal Justice, Correctional Institutions Division, ("the Director") has

answered and moved for summary judgment. [Dkt #16]  For the reasons stated below, the court

will deny Bridgers' application for a writ of *habeas corpus* and grant the Director's Motion for

Summary Judgment.

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA")

because Petitioner's petition for federal *habeas corpus* relief was filed on April 15, 2002, after

the AEDPA effective date of April 24, 1996.  The AEDPA provides in pertinent part:

1

(d) An application for writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In April of 1997, Donnie Miller picked up Bridgers at a truck stop in Norfolk, Virginia. Miller agreed to give Bridgers a ride to Texas and upon arriving in Tyler, Texas, Bridgers stayed with Miller's family while Miller resumed his duties as a truck driver. Bridgers met Miller's aunt, Mary Amie, and by the time Miller returned to Tyler in May, Bridgers was living "off and on" with Amie. On May 23, 1997, Bridgers was staying at Amie's house. When family members called Amie's house the next day, there was no answer. Amie's car was missing and she did not show up for work as scheduled. Several days later Amie's niece drove by Amie's house and noticed that the front door was cracked open. The niece entered the house and found Amie lying on the bed, noticed blood, and saw that the color was gone from her aunt's body. The niece called the police. When the police arrived they found Amie lying on her back with her feet hanging over the side of the bed. Amie had been shot twice, once in her back and once through her throat. There were few signs of any type of struggle and no sign of forced entry.

Three days after Amie's body was found, police in Fort Lauderdale, Florida received a tip regarding a murder suspect from Texas. The tip lead police to the Holiday Park area of the city where the police discovered Bridgers. The police approached Bridgers, advised him that they were conducting an investigation, and told him that they wanted him to come down to the police

2

station to answer some questions. Bridgers accompanied the police to the station where police were able to identify him and confirm the existence of a Texas warrant for his arrest. Bridgers gave the police a taped statement in which he admitted that he had killed Amie "for the money" after she returned home from work May 23. Bridgers indicated that he knew Amie had borrowed about sixteen hundred dollars from a bank in order to build a fence around her house and that she kept the money in her purse. He also said that he knew Amie had several thousand dollars worth of jewelry that she kept inside of her pocketbook. Before Amie came home from work on May 23, Bridgers found a gun that Amie kept beside her bed and placed it under his pillow. When Amie got into bed with Bridgers, he slid the gun out from beneath the pillow and pulled the trigger. The gun did not immediately discharge, so he shot Amie a second time. When Amie started screaming, he shot her two more times.

On April 9, 1998, Bridgers was convicted and sentenced to death for the murder of Amie during the course of a robbery. The Texas Court of Criminal Appeals affirmed his conviction and sentence in an unpublished opinion on October 25, 2000. *Bridgers v. Texas*, 73,112 slip op. (Tex.Crim.App. Oct. 25, 2000). The appellate court denied Bridgers' motion for rehearing on December 6, 2000. He filed an application for a writ of *certiorari* with the United States Supreme Court, which was denied on May 14, 2001. Concurrent with his direct appeal, Bridgers filed a state application for post-conviction relief on December 29, 1999. The trial court held an evidentiary hearing and made findings of fact and conclusions of law recommending that relief be denied. On May 31, 2000, the Texas Court of Criminal Appeals adopted the trial court's findings and conclusions and denied relief. *Ex parte Bridgers*, No. 45,179-01 (Tex.Crim.App. May 31, 2000). Bridgers filed his federal writ of *habeas corpus* April 15, 2002.

3

Bridgers raised six claims in his petition for *habeas corpus* relief, but in response to the

Director's Motion for Summary Judgment, he abandoned his third, fifth, and sixth claims. The

Court, therefore, need only address Bridgers' first, second, and fourth claims. The three

remaining claims allege the following:

(1) The requirements of *Miranda v. Arizona* were not satisfied by advising Bridgers that he
    had a right to an attorney *prior* to, but not *during*, questioning;
(2) Bridgers was unlawfully seized within the meaning of the Fourth Amendment when he
    was handcuffed; and
(4) Bridgers was denied the equal protection of the laws by the Texas Court of Criminal
    Appeals' disparate treatment of him as compared to the appellant in *Davidson v. State*, 25
    S.W.3d 183 (Tex.Crim.App. 2000).

In his first claim, Bridgers argues that his Fifth Amendment rights were violated because

the police officer who read him his *Miranda* warnings failed to inform him that he had the right

to an attorney during police questioning.[1] Bridgers was interrogated in Fort Lauderdale, Florida

by local law enforcement authorities for Amie's murder. Prior to his interrogation, Bridgers was

given the following warnings:

> You have the right to remain silent. Do you understand? Anything you say can and will
> be used against you in a court of law. Do you understand? You have the right to the
> presence of an attorney/lawyer prior to any questioning. Do you understand? If you
> cannot afford an attorney/lawyer, one will be appointed for you before any questioning if
> you so desire. Do you understand?

During the interview with police, Bridgers gave an audiotaped confession. The state sought to

introduce the confession at trial, and he objected to the admission of the confession on several

grounds, including the ground alleged here. The trial court held that the warnings given were

sufficient, and the Texas Court of Criminal Appeals affirmed the trial court's ruling on direct

appeal. In rejecting Bridgers' claim, the Texas Court of Criminal Appeals stated

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

> [t]he detectives did not tell [Bridgers] that he had the right to consult or speak to an
> attorney before questioning, which might have created the impression that the attorney
> could not be present during interrogation. They told him that he had the right to the
> *presence* of an attorney before questioning commenced. We think that this conveyed to
> [Bridgers] that he was entitled to the presence of an attorney before questioning and that
> this attorney could remain during questioning.

*Bridgers v. Texas*, 73,112, slip op. (Tex.Crim.App. Oct. 25, 2000) (emphasis in original;

citations omitted). The inquiry for this court is whether the state court's decision was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

In *Miranda*, the Supreme Court held that "prior to any questioning, the person must be

warned that he has the right to remain silent, that any statement he does make may be used as

evidence against him, and that he has a right to the presence of an attorney, either retained or

appointed." *Miranda*, 384 U.S. at 444. The *Miranda* Court further held that

> an individual held for interrogation must be clearly informed that he has the right to
> consult with a lawyer and to have the lawyer with him during interrogation under the
> system for protecting the privilege we delineate today. As with the warnings of the right
> to remain silent and that anything stated can be used in evidence against him, this
> warning is an absolute prerequisite to interrogation. No amount of circumstantial
> evidence that the person may have been aware of this right will suffice to stand in its
> stead. Only through such a warning is there ascertainable assurance that the accused was
> aware of this right.

*Id.* at 471-72. The Supreme Court has "never insisted that *Miranda* warnings be given in the

exact form described in that decision." *See Duckworth v. Eagan*, 492 U.S. 195, 202 (1989). In

*California v. Prysock*, 453 U.S. 355, 356-57, 359 (1981), the Court held that "the 'rigidity' of

*Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal

defendant," and that "no talismanic incantation was required to satisfy its strictures." In *Miranda*

itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with

5

our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant." *Miranda*, 384 U.S. at 476.

The Director argues that *Prysock* and *Eagan* stand for the principle that "the validity of police warnings does not turn on any precise formulations, but rather depends only on whether they reasonably convey *Miranda*'s essential rights before custodial interrogation." Both *Prysock* and *Eagan*, however, are distinguishable from the instant case. In *Prysock*, the defendant was informed that he had the right to talk to a lawyer before he was questioned, to have the lawyer present with him while he was being questioned, and all during the questioning, as well as the right to have a lawyer appointed to represent him. *Id*. at 356-357. The Supreme Court held that the warnings informing the defendant of his right to have a lawyer present prior to and during interrogation, coupled with the warning of his right to have a lawyer appointed, conveyed to the defendant his right to have a lawyer appointed if he could not afford one prior to and during interrogation. *Id*. at 361. In *Eagan*, the defendant was warned that he had the right to talk to a lawyer for advice before he was questioned, and to have the lawyer with him during questioning. *Eagan*, 492 U.S. at 198. The defendant was also informed of his right to the advice and presence of a lawyer even if he could not afford to hire one, although the police had no way of giving him a lawyer, but that one would be appointed for him "if and when [he went] to court." *Id*. The Supreme Court held that the warnings, in their totality, conveyed to the defendant his right to court appointed counsel under *Miranda*. *Id*. at 205.

Unlike the defendants in *Prysock* and *Eagan*, Bridgers was never specifically informed of his right to the presence of counsel *during* questioning. Because the defendants in *Prysock* and *Eagan* were warned of this right, the Supreme Court did not address what type of warning was

6

sufficient to convey to a suspect his right to the presence of an attorney during police interrogation.

Bridgers has cited several Fifth Circuit decisions finding warnings insufficient to satisfy *Miranda* where police failed to specifically advise a suspect of his right to the presence of an attorney during interrogation. In *Sanchez v. Beto*, 467 F.2d 513, 514 (5th Cir. 1972), *cert. denied, Estelle v. Sanchez*, 411 U.S. 921(1973), the Fifth Circuit held that the warning the defendant received, "of his right to retain counsel, of his right to request the appointment of counsel," did not convey to the defendant "the right to the presence at the interrogation of an attorney." *Id.* at 514. The defendant in *Windsor v. United States*, 389 F.2d 530, 532 (5th Cir. 1968), was warned that "he could speak to an attorney or anyone else before saying anything at all." The court held that "it is obvious that the full *Miranda* warnings were not given to [the defendant] . . . because [he] was not informed by the Government agents that he was entitled to the presence of an attorney, retained or appointed, during the interrogations." *Id.* at 533. The Fifth Circuit explained that "[m]erely telling him that he could speak with an attorney or anyone else before he said anything at all is not the same as informing him that he is entitled to the presence of an attorney during interrogation . . . ." *Id.*[2] In *Chambers v. United States*, 391 F.2d 455, 456 (5th Cir. 1968), the court relied upon *Windsor* in finding that where the defendant "was advised of his right to speak to or consult with an attorney, but was not advised that he was entitled to the presence of an attorney, retained or appointed during the interrogations," compliance with *Miranda* was lacking. In *Atwell v. United States*, 398 F.2d 507, 510 (5th Cir. 1968), the Fifth

---

[2] Contrary to what the Director argues, it is irrelevant that both *Sanchez* and *Windsor* predate the Supreme Court's decisions in *Prysock* and *Eagan* because *Sanchez* and *Windsor* follow *Miranda* and neither *Prysock* nor *Eagan* alter *Miranda*.

Circuit held that a warning informing an accused of his right to consult with an attorney, retained

or appointed, "at anytime" did not comply with *Miranda*.[3]  Additionally, Bridgers cites cases

from the Sixth, Ninth, and Tenth Circuits that follow the Fifth Circuit's interpretation of

*Miranda. See United States v. Tillman*, 963 F.2d 137, 140-42 (6th Cir. 1992) (warning that

defendant had "the right to the presence of an attorney" failed to convey to defendant that "he

had the right to an attorney both before, during and after questioning"); *United States v. Noti*, 731

F.2d 610, 615 (9th Cir. 1984) (holding that warning that defendant had "right to the services of an

attorney before questioning" did not convey to defendant right to counsel during questioning,

citing *Windsor*); *United States v. Anthon*, 648 F.2d 669, 672-74 (10th Cir. 1981)), *cert. denied*,

455 U.S. 984 (1982) (informing defendant of "right to counsel" insufficient to convey right to

presence of attorney during questioning).

The Director argues that despite the aforementioned case law, Bridgers cannot

demonstrate that the Texas Court of Criminal Appeals' decision was objectively unreasonable

under § 2254(d)(1) because other circuit courts have determined that *Miranda* does not require a

specific admonishment of the right to counsel during questioning. *See e.g. United States v.*

*Lamia*, 429 F.2d 373, 376-77 (2nd Cir.), *cert. denied*, 400 U.S. 907 (1970) (warning that

defendant had "right to an attorney" met requirements of *Miranda* and "effectively warned that

[defendant] need not make any statement until he had the advice of an attorney"); *United States*

---

[3]  Other Fifth Circuit cases supporting Bridgers' position include *Montoya v. United States*, 392 F.2d 731,
735 (5th Cir. 1968) (holding that "an express statement that the person questioned 'has the right to consult with a
lawyer and to have the lawyer with him during interrogation' is 'an absolute prerequisite to interrogation'"); *Fendley
v. United States*, 384 F.2d 923, 923-24 (5th Cir. 1967) (warning that defendant had "the right to consult an attorney
or anyone else before making a statement" did not convey to defendant his right to have court-
appointed counsel present during the interrogation); *Lathers v. United States*, 396 F.2d 524, 535 (5th Cir. 1968)
(holding *"Miranda* requires the pre-confession warning to specify that a defendant is entitled 'to the presence of an
attorney, retained or appointed during the interrogation'").

8

*v. Anderson*, 394 F.2d 743, 745-46 (2nd Cir. 1968) (holding that warning defendant had "a right to

a lawyer at this time" complied with *Miranda*); *United States v. Vanterpool*, 394 F.2d 697, 698

(2nd Cir. 1968) (warning defendant of his "right to an attorney and to consult with a lawyer at this

time" satisfied *Miranda*); *United States v. Frankson*, 83 F.3d 79, 82 (4th Cir. 1996) (warning that

defendant had "the right to an attorney" conveyed to defendant "that his right to an attorney

began immediately and continued forward in time without qualification");*United States v.

Adams*, 484 F.2d 357, 362 (7th Cir. 1973) (warning including "the right to counsel" satisfactory

citing *United States v. Lamia*); *United States v. Caldwell*, 954 F.2d 496, 502 (8th Cir.), *cert.

denied*, 506 U.S. 819 (1992) (noting that that circuit has not required that a defendant be

explicitly advised of his right to an attorney before and during questioning).

    *Miranda* established the requirements for informing a suspect of his constitutional rights.

Since that Supreme Court decision, many circuit courts have analyzed various warnings given to

suspects and determined whether those warnings complied with *Miranda*.  While the Fifth

Circuit strictly interprets *Miranda*, and particularly the warning regarding a suspect's right to

counsel during interrogation, the parties have demonstrated that there is a split in circuit authority

on the issue.

    The Texas Court of Criminal Appeals determined that the police detective's statement

which informed Petitioner that he had the right to "the presence of an attorney/lawyer prior to any

questioning" impressed upon Petitioner his right to have an attorney present both before and

during questioning. The dispositive issue under 28 U.S.C. §2254 is whether the state court's

denial of Bridgers' *Miranda* claim was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States.

Because there is a split in the circuits on the question of whether the warnings given under

*Miranda* need be strictly construed, and because the warnings in the present case would be

considered in substantial compliance with *Miranda* under the more liberal interpretation, the

court cannot find that the state court's application of federal law in this case was unreasonable.

In the present case, therefore, the court finds that the state court's decision that the warnings

Petitioner received conveyed to him his right to the presence of an attorney during questioning

was not contrary to, or an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States in *Miranda*. *See* 28 U.S.C. § 2254(d)(1).

The Director's Motion for Summary Judgment will be granted on this claim.

In his second claim, Bridgers argues that his Fourth Amendment rights were violated

when he was handcuffed by Florida law enforcement authorities and taken to the police station

for questioning about this crime. Bridgers suggests that the action of the law enforcement

authorities amounted to an unlawful arrest that implicated the Fourth Amendment protection

against unreasonable searches and seizures, and thereby rendered his statement to police

inadmissible. Bridgers initially raised this claim in a pretrial motion to suppress. The trial court

held a hearing on the motion during which the court heard testimony from several witnesses

involved in the investigation of Bridgers, all of whom Bridgers had the opportunity to cross-

examine. The trial court found that Bridgers' statement to police was not the product of an

illegal detention. Bridgers renewed his objection at trial, and the court again overruled his

objection. He then raised this claim on direct appeal. The Texas Court of Criminal Appeals held

that the record supported the trial court's finding that Bridgers voluntarily accompanied the

officers to the police station and, therefore, he was not seized within the meaning of the Fourth

10

Amendment.

In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." The Fifth Circuit has found that this language puts "the burden on a *habeas* petitioner to plead and prove the denial of a full and fair hearing in state court." *See Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986). Bridgers argues that he was denied a full and fair opportunity to litigate his claim because the trial judge incorrectly "concluded that the Fort Lauderdale detective did not arrest [Bridgers] but that he voluntarily accompanied law enforcement officers to the police station." Specifically, Bridgers complains that the trial court ignored the testimony of the arresting officer that he handcuffed Bridgers before transporting him to the police station.

On direct appeal, the Texas Court of Criminal Appeals cited several factors which bear upon whether a reasonable person would have felt free to terminate an encounter with law enforcement officers and walk away, and determined that the trial court did not abuse its discretion by finding that Petitioner's encounter with law enforcement officers in the park did not amount to a seizure under the Fourth Amendment. The appellate court addressed Bridgers' complaint about the handcuffs, noting that "[h]andcuffing is just one of the factors in the analysis of whether a reasonable person in [Bridgers'] position would have felt free to leave." The state court concluded that "there is no evidence in the record that compels a finding that a reasonable person in [Bridgers'] position would not have felt free to walk away and terminate the encounter."

11

The Fifth Circuit has held that the *Stone* bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim. *See Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978); *see also Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1264 (2003). Furthermore, *Stone* emphasizes the *opportunity* for a defendant to fully and fairly litigate a Fourth Amendment claim. Here, Bridgers raised his Fourth Amendment claim before trial, during trial, and on direct appeal. He did not challenge the Texas Court of Criminal Appeals' decision on this issue in his Motion for Rehearing or in his state application for post-conviction relief despite having the opportunity to do so. Because he has failed to persuade this court that he was denied a full and fair opportunity to litigate his Fourth Amendment claim, the court is barred from considering the merits of his claim. The Director's Motion for Summary Judgment will be granted on this claim.

In his final claim, Bridgers argues that he was denied equal protection by the Texas Court of Criminal Appeals when the state court interpreted the requirements of TEX.CODE CRIM.PROC. art. 38.22 differently as applied to him than to a non-capital defendant. Specifically, he contends that the Florida law enforcement officers who interrogated him after his arrest failed to comply with the requirements of art. 38.22, § 2(a)(5) by neglecting to advise him of his statutory right to terminate the interview at any time. Article 38.22 states, in pertinent part,

> Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:
> (a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:
> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
> (2) any statement he makes may be used as evidence against him in court;

12

(3) he has the right to have a lawyer present to advise him prior to and during any
questioning;
(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to
advise him prior to and during any questioning; and
 (5) he has the right to terminate the interview at any time; and
 (b) the accused, prior to and during the making of the statement, knowingly, intelligently,
and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of
this section.

Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding unless:
 (1) an electronic recording, which may include motion picture, video tape, or other visual
recording, is made of the statement;
(2) prior to the statement but during the recording the accused is given the
warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently,
and voluntarily waives any rights set out in the warning; . . . .

Bridgers relies on the Texas Court of Criminal Appeals' decision in *Davidson v. Texas*, 25

S.W.3d 183 (Tex.Crim.App. 2000) which reversed the conviction of a non-capital offender

because the interrogating officers failed to electronically record the defendant's confession as

required by art. 38.22, § 3(a). Bridgers argues that the reasoning in *Davidson* applies to the facts

of his case and requires reversal of his conviction.

The Director contends that this claim is unexhausted. Applicants seeking federal *habeas*

*corpus* relief under § 2254 are required to exhaust all claims in state court prior to requesting

federal collateral relief. *See Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Whitehead v.*

*Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). The exhaustion requirement is satisfied when the

substance of the federal *habeas corpus* claim has been fairly presented to the state courts. *See*

*Whitehead*, 157 F.3d at 387. Initially, Bridgers conceded that the claim was unexhausted, but

"upon further reflection," determined that he did present his claim in state court. In his Motion

for Rehearing, Bridgers complained that the Texas Court of Criminal Appeals' decision rejecting

his claim that his confession was inadmissible because the police failed to advise him of his right to terminate the interview, ignored the appellate court's ruling in *Davidson*. While his claim was not couched as an "equal protection" claim, the court finds that Bridgers fairly presented the substance of his claim to the state courts and argued for application of the reasoning in *Davidson*. Accordingly, the court finds that Bridgers has satisfied the exhaustion requirement of § 2254.

In *Davidson*, Montana police obtained an oral confession from a defendant which Texas prosecutors sought to introduce into evidence. The defendant objected to the admission of the statement on the grounds that there was no electronic recording made of the statement in violation of art. 38.22, § 3(a). The Texas Court of Criminal Appeals noted that "[t]he plain language of art. 38.22, § 3(e) requires strict compliance with all portions of § 3(a), which sets out the specific conditions which must be satisfied before such statements may be used as evidence against a defendant." Because § 3(a) required an electronic recording of the oral statement, and none was made, the Texas Court of Criminal Appeals concluded that the statement was not admissible against the defendant. Bridgers argues that the Texas Court of Criminal Appeals' failure to employ the reasoning in *Davidson* to this case violated his right to equal protection under the law.

In the instant case, Bridgers' oral statement was recorded, but authorities failed to warn him of his right to terminate the interview at any time, as required by art. 38.22, § 3(a)(2). In addressing the allegedly deficient warnings on direct appeal, the Texas Court of Criminal Appeals noted that "[t]he trial court found that the warnings given by the Florida police officers were the 'fully effective equivalent of those requirements of 38.22.'" Alternatively, the Texas Court of Criminal Appeals stated that the trial court "found that [Bridgers'] statement contained

14

assertions of facts and circumstances that were found to be true upon further investigation by the police and that those facts and circumstances conduced to establish the guilt of the accused" and was, therefore, admissible under art. 38.22 § 3(c).

Section 3(c) states the following

Subsection(a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

A statement admitted under § 3(c) is exempted from the statutorily required warnings of § 2(a). The Texas Court of Criminal Appeals found that Bridgers' statement satisfied the requirements of § 3(c) because, "before [Bridgers] gave his statement, neither the Florida nor the Texas detectives knew where [he] had left the victim's car or what he had done with her jewelry. [Bridgers] described the area of Dallas in which he left the car and told the officers that he had pawned the victim's jewelry. Texas detectives found the car where [Bridgers] had said it would be and found pawn slips for the jewelry with [his] name on them." Because Bridgers' statement led to the recovery of stolen property, the Texas Court of Criminal Appeals found that the trial court did not err in admitting his statement into evidence, despite the Florida authorities' failure to give the exact warnings required by art. 38.22, § 2(a).

Under federal law, the Equal Protection Clause essentially directs that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Generally, to establish an equal protection claim, the plaintiff must prove that similarly situated individuals were treated differently. *See Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992). In the present case, Bridgers has failed to make such a showing. The

15

state court in this case found Bridgers' statement admissible because it fell under art. 38.22, §

3(c), that is, the statement contained facts or circumstances which were later found to be true and

which helped to establish Petitioner's guilt.  By contrast, there is nothing to suggest that the

defendant's statement in *Davidson* was admissible under § 3(c).  Because Bridgers' statement

fell within an exception to art. 38.22 that the defendant's statement in *Davidson* did not, the court

finds that Bridgers has failed to establish that he is "similarly situated" to the defendant in

*Davidson*.  Accordingly, the court cannot find that Bridgers' rights under the Equal Protection

Clause of the Fourteenth Amendment have been violated.  The court will grant the Director's

Motion for Summary Judgment on Bridgers' final claim.

      The court finds that there are no material issues of fact and that the Director is entitled to

judgment as a matter of law on each of the claims raised in Bridgers' petition.  The Director's

Motion for Summary Judgment will be GRANTED.  Bridgers' application for a writ of *habeas*

*corpus* will be DENIED.  An order and judgment will be entered.


SIGNED this _30th_ day of _March_, 2005.


RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE